Very well. Mr. Mercer, we'll hear from you first. Thank you and good morning, Your Honors. My name is David Mercer. I represent the appellant, Timothy O'Laughlin, in this case. Mr. O'Laughlin is civilly committed pursuant to 18 U.S.C. 4246 and has been so since September 19, 2016. As this Court, I am sure, is aware, civil commitments under 4246 are indefinite and hold a potential lifelong term of confinement in the Bureau of Prisons for those persons who were committed under that statute. The statutory scheme contemplates three different possible endings for such a commitment. One ending is if a state agrees to assume responsibility for the person's care in custody, thus extinguishing the federal interest and jurisdiction over that defendant. Another possibility is that the Attorney General can move for either conditional or unconditional release and the committing court grants that motion, thus releasing them either conditionally or unconditionally. The third way is by a motion from the defense side that's filed under 18 U.S.C. 4247H. And again, if that motion is filed and granted by the committing court, the person is either conditionally or unconditionally released. Mr. O'Laughlin filed multiple pro se motions for his release pursuant to 4247H in January and February of this year. The district court denied those pro se motions, not on the merits, but by interpreting and applying 4247H to allow only Mr. O'Laughlin's attorney or guardian to seek release from his 4246 commitment. In reaching this decision, the district court relied heavily on this court's prior decision, its 2019 decision, also involving Mr. O'Laughlin, where he attempted again to seek release under 4247H by filing a number of pro se pleadings. The prior O'Laughlin decision, however, resolved only a Sixth Amendment challenge to the controlling statute and expressly left open a Fifth Amendment act on this exact statute. So the issue before the court today, as briefed by the parties, is whether 4247H, as interpreted and applied by the district court in this case, violated Mr. O'Laughlin's rights under the Fifth Amendment to due process. Counsel, do you agree that the Parales case addresses this, it's simply not controlling, or do you think it's distinguishable? I think it's not controllable. Okay. Would you explain that, please? I don't think that this, I don't think it's controlling because this court has not answered that question. In the Eighth Circuit, this is an issue of first impression. Didn't that case address due process or not? I don't think so. I'll go back and check. Okay. Isn't the issue simply that it's unpublished? That certainly, I mean, that certainly doesn't help the government's reliance on it. So I think both parties would agree that this is a case that presents a first issue for this court's decision. And so I don't think the Parale case is controlling in this situation, in addition to it being unpublished. I think the issues before the court are unique. They would be reviewed de novo because this presents a constitutional challenge. And I think that there are two manifestations of the violation of Mr. O'Loughlin's Fifth Amendment rights to due process. One has to do with his access to the courts, and the second one, which I'll address in a moment, has to do with this interpretation of 4247H generating arbitrary and capricious outcomes that I don't think are tolerable under the Fifth Amendment. Mr. O'Loughlin is currently, and by that I mean today, he's aggrieved by a profound loss of liberty. He is, at this moment, in the Bureau of Prisons indefinitely. And the only thing that will change that is one of those three options that I mentioned in my introductory comment. The Fifth Amendment vision of due process requires that Mr. O'Loughlin have access to the courts. And I believe that that vision can only be fully realized if the statute is interpreted to allow him the right to, so to say, seek his own release. Now, as I indicated in my brief, there is some overlap between the Sixth Amendment right to counsel and the Fifth Amendment right to due process. And I think that the Supreme Court's decision in Feretta, which dealt with the Sixth Amendment, at least has some relevance here because those are interrelated and overlap in concept. I think what really comes to my mind that brings us into focus, though, is that if Mr. O'Loughlin is denied the right to, pro se, seek his own release, and if he must, by definition, rely on only an attorney or only a legal guardian, what happens when those two persons fail? But that's not the case here, is it? I don't know. Well, he has appointed counsel. Well, he was originally appointed counsel in his 4246 case. And to a certain extent, I'm still noticed on ECF of happenings in his case, and certainly I would have been noticed on all of his pro se pleadings. It's somewhat inconsistent, though. So, for example, in my experience, persons who are conditionally released and violate the condition of release, I'm appointed again. And another interesting fold in this issue is Mr. O'Loughlin did not start off as my client. And I only became noticed on ECF when I entered an appearance in his case. So, to say that he has counsel does not really fully explain the intricacies of these situations. And does that mean that he has someone who is daily, monthly, yearly monitoring the situation and joining him in his pro se pleadings? Not necessarily. It's a little bit more complicated than that. And so, I suppose the thing that I come back to is this court has previously held that in mental health commitment cases, there is no constitutional right to counsel. There's a statutory right, but there's no constitutional right. And so I come back to the question, what if there is ineffective representation either by his lawyer or by his guardian? What does he do? If we're going to limit the statute to give only those two people standing to file a motion for release, what happens when they fail? What happens when they're absent? What happens when they're not noticed on ECF? There is a huge gap here that can only be filled if Mr. O'Loughlin and another person situated like him can file a pro se motion seeking their own release. Now, if that were to happen, it would be extremely likely that the court might appoint him counsel to further help him in this litigation. But the problem is, as it's currently being interpreted and applied, he can't get in the gate except through other parties who may or may not do their job. Who may or may not be there to help him seek redress by filing a pro se pleading. And so the thing that is convincing to me is that this isn't a minor matter. This is a potential life sentence. And in addition to helping people that are incarcerated by mental health commitments, I do, I have a criminal case load. And when I get a criminal case where there's a potential life sentence, it's all hands on deck. It's a big deal. It matters. And here, this is a mental health case. It's a civil case. Yes. But at the end of the day, Mr. O'Loughlin's life is indistinguishable from a person serving a criminal life sentence in the Bureau of Prisons. And because of that, it seems to me that under the Fifth Amendment's vision of his right to have access to the courts, that he should have the right to seek release by his own motion. And that brings me to the second affirmative that I believe exists in this case under the Fifth Amendment, and that is that it will almost guarantee arbitrary and capricious outcomes. If we are to read the statute the way the district court did, and this, I think, helped me understand what the district court did. The district court read 4247H as a statute of exclusion. It excludes Mr. O'Loughlin from seeking his own release. Instead of reading it as a statute of inclusion by nominating an attorney or a guardian to have the right to seek release for him under that statute. I don't think it should be read as a statute of exclusion. It is simply a statute that includes other people, including a guardian that may or may not be a lawyer who has a right to seek that release. Haven't we read it as a statute of exclusion in the Sixth Amendment context? I think that's a fair reading of the prior decision, yes. And I would disagree with that respectively. And I think that it becomes even more egregious in this case because Mr. O'Loughlin is being denied access to the courts. The issue with arbitrary and capricious outcomes is really pretty straightforward. That is, the district court read the statute as creating two potential movements for relief under that statute, a lawyer or a guardian. Well, there are some persons who have both a lawyer and a guardian. There are some people like Mr. O'Loughlin who arguably only have a lawyer but does not have a legal guardian. And I think that it's conceivable that there are some people committed under 4246 that don't have either a lawyer or a guardian. What do they do? I mean, the way that the statute is being interpreted and applied, you have some people in this class who have two people who can move for their release. You have some people in the class who have one or another persons that can move for their release. And I think it's very likely that there are other people in this class that have zero people who are authorized by statute to move for their release. If Mr. O'Loughlin's right to seek relief pro se is extinguished, I think it guarantees inequitable, arbitrary, and capricious outcomes. I'd ask the court not to apply that interpretation and to reverse the district court. I'll save the rest of my time for rebuttal unless the court has questions. I had one question. Yes, sir. It should depend on, do you think this, assuming you're right that there's some due process right to proceed without counsel, would it be a fact-intensive inquiry into whether the particular committed person has a lawyer, a capable lawyer, and so forth? Is it supposed to blanket right to file a pro se request in any and all cases? Your Honor, this is how I would respond to that. Let's suppose that there is a capable on-board attorney, and they disagree with the defendant that there is a basis for filing such a motion under 4247A. Well, number one, let's suppose I was that lawyer. I'm not a trained mental health professional. I don't know if Mr. O'Loughlin is in a place where he could be conditionally or unconditionally released. Why should he have to go through me and accept my judgment on his case rather than going straight to the court and having the ability to… Your answer is you think there's a blanket due process right for a mentally, I mean, a committed person to file in every case. I do, Your Honor. All right. And do you think the briefs in this case need to be under seal? This came up in another case today. We've got all these sealed briefs, and I'm trying to understand why. My concerns with these mental health cases is because they necessarily implicate the fact that he's been diagnosed with a mental illness that makes him a danger to other people or their property and thus committable. It could touch upon his TIPA rights and his rights to retain privacy as to his mental health. I understand the theoretical possibility. I'm just asking, in this case, do these briefs need to be sealed? I don't know that they do because they don't explicitly and in detail discuss his mental state. All right. Well, we'll discuss it and put out an order to show cause if we think it's warranted. Thank you. Thank you, Judge. Thank you. All right. Ms. Hyde, we'll hear from you. Thank you, Your Honor. May it please the Court, my name is Cynthia Hyde, and I represent the United States in this case. Interesting that the first half of Mr. Mercer's argument was exactly what I was going to say, so I will dispense with the facts, the background, the civil commitment proceedings, et cetera. But I do have one thing to say that I think may be important and shed some light on the argument that Mr. Mercer has made. Mr. Mercer is concerned that Mr. O'Loughlin just has an attorney in this case and doesn't have a legal guardian, and the statute only allows for a legal guardian or an attorney to file a motion. But what we've glossed over in that analysis is the fact that there is an attorney at the medical center that files motions for conditional release routinely. And in this case, if the medical panel finds that Mr. O'Loughlin has recovered sufficiently that he should be conditionally released, they will file that motion and ask that he be conditionally released without regard to Mr. Mercer or any attorney in Mr. Mercer's position. So I felt like that was probably the most important thing that was sort of omitted in the prior argument, because, yes, it's true that the statute does only allow for an attorney or a legal guardian to file those, but there's a procedure in place that allows for relief, conditional release, unconditional release, by the attorneys there at the medical center as well. Counsel, whose interests do those attorneys represent? You know, this is not like a criminal proceeding where the government would have an interest in persecuting or prosecuting or incarcerating an individual. This proceeding is more of a global attempt to get someone mentally competent to be released safely back into the community. There's an entire staff at the medical center who works diligently to restore these people to competence, and I think that's another important part about sealing this. While the briefs don't necessarily need to be sealed in these cases, the record below is very personal. I don't know if the court ever has an opportunity to read, but the reports are often the person's childhood, the crimes that they committed, the crimes that were committed against them as children. There's a lot of good reason to keep the record below sealed. But the briefs themselves, sometimes we have to talk about what the person has done. This case doesn't particularly require it, but as a general principle, mental health proceedings, I think, should be sealed to protect the interests of the civilly committed person. The general principle proceedings in the U.S. Court of Appeals are public. Yes, Your Honor. That's my question. But go ahead. It's more important to address the merits of the case. The only other argument that I really thought might be important, I do think that the case law that has been addressed in our brief does show that the Fifth Amendment and the Sixth Amendment are intertwined, and the analysis that was put forth by this court in the 2019 decision on Laughlin is the correct analysis for the Sixth Amendment and the Fifth Amendment as well. And so I thought it was important to mention the Perales decision. I think the fact that it is unpublished under the new, newer at least, Court of Appeals, we're allowed to now use unpublished decisions with force and authority. So it's just, I think, that in Perales, it was not strictly Fifth Amendment, but yet was Sixth Amendment. So I would simply argue that the prior analysis that this court has done in Laughlin is the correct one and should be used here as well. If there are no further questions, I would ask that you affirm the decision of the district courts. Well, I don't understand your last point. Laughlin specifically said it was not addressing the due process clause, and there's a different analysis under the Fifth Amendment than under the Sixth Amendment. So is that the argument? Your argument is that we should just follow the previous O'Laughlin decision? No, but yes. I'm sorry, Your Honor. Suppose you have a case where there's no lawyer and no guardian, and the committed person wants to file a motion. Why wouldn't he be entitled to do so? Well, there's never going to be a situation where a person doesn't have a lawyer because it's required under 4246 that the person be appointed an attorney when they are civilly committed. So they will have an attorney. It appeared to me that the previous article. Mr. Mercer's hypothetical of no lawyer, no guardian couldn't happen because there's always a court-appointed lawyer? That's my understanding. Counsel, are there periodic updates that are required from counsel? Or, I mean, is this a situation where you have a lawyer who's not paying attention, not answering mail from the prison, and kind of neglecting the case? What happens then? Well, two things I would say to that. First of all, we do have the annual review for every civilly committed person where the staff at the medical center reviews that person's mental health state and decides whether or not it's appropriate to try to get state placement, whether or not they need to stay where they are. So there's a continual review while they're in the medical center. I'm sorry, I lost your other point. I don't know that I had two. It's just if the lawyer's not responsive. Thank you, Your Honor. That's what I was going to say. In fact, in this case, Mr. O'Loughlin has filed motions asking that the court force Mr. Mercer to file this motion on his behalf. So if you look through the docket, there are so many pro se motions in Mr. O'Loughlin's case, but there are some that are asked in the district court to ask Mr. Mercer to do something. As you well know, the magistrate court has law clerks. They review these motions. There's a pro se clerk in Kansas City that reviews some of the inmates' motions. And so there is review. If someone's rights are being egregiously ignored, the court is in place as well. Well, but the question is what authority would the court have to do anything about it? And I think the argument here today is that the due process clause would authorize the court in a situation where the lawyer was negligent and was not willing to file a meritorious motion and the committed person could show that there were grounds for a sound motion, but the lawyer was intransigent, that the court should be able to entertain the motion. I would never say that. I hear your position is no. In that case, there's no right for the committed person to file the motion, even if the lawyer is ineffective and intransigent, and the committed person just has to rely on these lawyers employed by the state and hope that they will, in their annual review, come forward with a suggestion for release. But the question in this case is why shouldn't the committed person have a right to file a motion if the system breaks down? The statute does not allow for the person to file their own motion. That's the most important part of this analysis. Well, but the argument here is that the Constitution overrides the statute in a case like I hypothesize. And the question is whether the due process clause overrides the statute in that kind of situation. Do you have a view on that? Well, I think that it's important to never ignore the rights of the committed individual. So I would never say that they should not have a right to come before the court. However, under this particular statute, they don't. And I'm a little uncomfortable with the hypotheticals because there are only four institutions in the United States that have these kinds of proceedings. And they are very well oiled. Mr. Mercer or someone like Mr. Mercer is appointed to every person. They don't appoint a brand-new person out of law school who's never been familiar with this. Under the civil commitment statute, the Federal Public Defender's Office steps in, and they do an excellent job of protecting the rights of these individuals. So it's — Can a detained person request appointment of new counsel or substitution of counsel? Does that ever happen? They have done that. And, in fact, in Mr. Mercer's office, they've substituted counsel because through the years, sometimes the inmates are in there longer than a Federal Public Defender works. But on the motion of the detained individual, in other words, not simply as a matter of retirement. I think Mr. Mercer can speak to that better than I can. Through the years, I've seen many of those motions asking that they be removed from the case because they're not doing what the person wants them to do. You know, the elephant in the room that we haven't discussed is the fact that people are in there because they are not mentally competent. And so that's why it's important in this situation to have an attorney evaluate whether the motion needs to be filed. As we do state in our brief, Mr. Laughlin has a good attorney in this case who could file a motion for his release right now if Mr. Mercer thought it was appropriate. It clearly isn't appropriate, and a review of the docket will let you know that because Mr. Laughlin is civilly committed and has not been restored to competency. And it's evident from his motions that he isn't. So I'm a little uncomfortable with the hypotheticals because I think that we should deal with just this particular case and evaluate the statute and how it is written and how it should be interpreted under the Due Process Clause. Well, in this particular case, the magistrate judge said the defendant had come forth only with conclusory allegations and that there was no reason to second-guess counsel's approach to the case. So there was a review of the matter. But the reason for the hypotheticals is that I thought you were advocating a bright-line rule that no matter what the facts, there would never be a right for the committed person to come forward. And now I hear you saying, well, maybe we don't have to really decide that because on these particular facts, there was no violation. Yes, Your Honor. I would prefer to have that second opinion be the opinion that I'm setting forward. All right. I understand. If there's nothing further, then I would ask that you affirm the opinion of the district court. Thank you. If I could, in the minute and a half that I have left remaining, just discuss some of the questions that the court asked the government. The government indicates that there is a government lawyer located at the medical center who has a job of monitoring these cases. Absolutely true. Great guy. He's a friend of mine. He's a great lawyer. At the end of the day, he's the person who filed the petition seeking commitment of Mr. O'Loughlin and advocated in court. It seems inappropriate for us to also task him with being an objective fact-finder who will monitor Mr. O'Loughlin's case rather than having Mr. O'Loughlin have the opportunity to advocate for himself. Potentially, after filing a 4247H motion, have someone appointed who will advocate for his interest in that litigation. The government also talked in response to the court's question about whether he will always have a lawyer. It's not a given. It's often the case, but it's certainly not a given. In my own practice, I realized that cases where I was responsible, I wasn't getting ECF notifications because even though my office had previously represented the individual, I'd never entered an appearance. I had to enter an appearance so I'd start getting ECF notifications like the annual risk assessment. It's not an absolute that people who are committed under 4246 are always going to have a lawyer. Last, one of the things I have to do, if I could just finish this thought, one of the things I have to do in these cases is I have to file an affidavit indicating that this person is indigent and entitled to representation by my office. What about a person who faces a 4246 commitment who's not indigent? Will they always have a lawyer? I don't know that this statement that they'll always have a lawyer is, in fact, the reality of the situation. We'd ask you to reverse the question. Thank you. All right. Thank you to both counsel for your arguments. The case is submitted. Court will file a decision in due course.